IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELSEY STEVENS, individually, | ) |
|         Plaintiff, | ) Case No. |
| v. | ) **JURY TRIAL DEMANDED** |
| GENERAL MOTORS LLC, | ) |
|         Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff Kelsey Stevens and for her claims and causes of action for her injuries, states as follows:

### BACKGROUND

1. Plaintiff Kelsey Stevens ("Plaintiff") files this Complaint pursuant to Order No. 149 in the multidistrict litigation involving defendant General Motors LLC ("GM"), Case Nos. 14-MD-2543 and 14-MC-2543 in the United States District Court for the Southern District of New York.

2. Plaintiff has contemporaneously filed a Related Case Statement identifying this lawsuit as related to Case Nos. 14-MD-2543 and 14-MC-2543, as well as the original complaint under which her causes of action first arose, *Mistrot, et al. v. General Motors LLC*, Case No. 1:16-cv-02919, also pending in the United States District Court for the Southern District of New York.

3. Plaintiff has paid the necessary filing fee associated with this Complaint pursuant to Order No. 149 and 28 U.S.C. § 1914(a).

### PARTIES

4. Plaintiff is a citizen and resident of the State of Missouri.

5. Defendant General Motors Corporation ("GM") is a foreign limited liability company, organized under the state laws of Delaware.

## JURISDICTION AND VENUE

6. Jurisdiction and venue are proper in this Court because the original complaint in which Plaintiff's causes of action were first filed, Case No. 1:16-cv-02919 in the United States District Court for the Southern District of New York, was subsequently combined into multidistrict ligation in the United States District Court for the Southern District of New York, Case Nos. 14-MD-2543 and 14-MC-2543.

7. Jurisdiction and venue are proper in this Court because on April 17, 2018, the United States District Court for the Southern District of New York ordered Plaintiff to file a new complaint in this Court, Order No. 149, Case Nos. 14-MD-2543 and 14-MC-2543.

8. The United States District Court for the Western District of Missouri also has jurisdiction over this matter under 28 U.S.C. § 1332(a) because Plaintiff and defendant GM are diverse and the amount in controversy exceeds $75,000.

9. The United States District Court for the Western District of Missouri has jurisdiction over Defendant GM because GM regularly transacts business, designs, produces, advertises, markets, and/or sells its products in the Western District of Missouri, from which it derives substantial revenue and has availed itself of the benefits and protections of Missouri law, such that the exercise of personal jurisdiction over GM in the Western District of Missouri is proper.

10. Venue is appropriate in the Western District of Missouri under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred

in the Western District of Missouri and/or 28 U.S.C. § 1391(b)(3) because GM is subject to personal jurisdiction in the Western District of Missouri.

### ALLEGATIONS COMMON TO ALL COUNTS

11. On or about July 21, 2012, Plaintiff was riding as a passenger in the front passenger seat of a 2009 Chevrolet Malibu (VIN 1G1ZH57B29F145516; the "Malibu") driven by Mark Nunnelee ("Nunnelee").

12. At approximately 1:34 A.M. on July 21, 2012, Nunnelee and Plaintiff were traveling southbound in the Malibu on Interstate 29 in Kansas City, Platte County, Missouri.

13. At approximately the same time on July 21, 2012, Paul McCleary ("McCleary") was traveling northbound in the southbound lanes of Interstate 29 in a 2006 Dodge Charger (VIN 2B3KA53H86H232579; the "Charger").

14. McCleary, traveling the wrong direction on Interstate 29 in the Charger, collided head-on with Plaintiff and Nunnelee in the Malibu (the "Collision").

15. As a result of the Collision, Nunnelee's front driver-side airbag deployed.

16. Plaintiff's front passenger-side airbag did not deploy in the Collision.

17. Plaintiff was properly wearing her available shoulder and lap seat belt at the time of the Collision.

18. The front driver-side airbag of the Malibu deployed in the Collision, but the front passenger-side airbag of the Malibu did not deploy, leaving Plaintiff without the protection of a frontal airbag.

3

19. As a direct and proximate result of the failure of the Malibu's front passenger-side airbag to deploy, Plaintiff suffered severe injuries beyond those she would have sustained had the airbag deployed.

20. As a direct and proximate result of the acts and/or omissions of GM described herein and the failure of the Malibu's front passenger-side airbag to deploy, Plaintiff suffered severe injuries for which she required and received extensive medical treatment.

21. As a direct and proximate result of the acts and/or omissions of GM described herein and the failure of the Malibu's front passenger-side airbag to deploy, Plaintiff has suffered economic and noneconomic damages, well in excess of $75,000, including but not limited to: medical bills and expenses, lost wages, mental anguish, and emotional pain and suffering.

## FIRST CAUSE OF ACTION
## PRODUCT LIABILITY – STRICT LIABILITY

22. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 21 as if fully set forth herein.

23. Defendant GM, and its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, designed, assembled, manufactured, marketed, advertised, and sold the Malibu in the ordinary course of its business.

24. Prior to the Collision on July 21, 2012, the Malibu was in substantially the same condition as when it left the control of defendant GM and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims.

25. At the time the Malibu left GM's, and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, possession or control,

the Malibu was in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

26. At the time the Malibu left GM's, and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, possession or control, the Malibu was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics.

27. Specifically, the Malibu was unreasonably dangerous to Plaintiff Kelsey Stevens and other consumers and/or users by reason of defect in its design and/or manufacture.

28. At the time of the events described in this Complaint, the Malibu was being used in a reasonably foreseeable manner and intended by defendant GM and/or and its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims.

29. The Malibu was defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer/user.

30. The defects include, but are not limited to, failure of the front passenger airbag to deploy in the Collision.

31. As a direct and proximate result of the defects described in this Complaint, Plaintiff was injured and suffered enhanced injuries beyond the injuries she would have sustained, and will continue to suffer in the future, had the airbag deployed.

32. At all times relevant to this Complaint, defendant GM, and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, failed to warn or inadequately warned Plaintiff, the owner, users, and those who might

reasonably be endangered by the defects that GM knew or should have known existed in the Malibu.

33.   The inadequate warning and/or failure to warn of the defects described in this Complaint are themselves defects in the Malibu.

34.   As a direct and proximate result of the Malibu being sold without adequate warnings regarding its dangerous and defective condition as described in this Complaint, Plaintiff has suffered and will continue to suffer in the future damages and injures as described in this Complaint.

## SECOND CAUSE OF ACTION
## PRODUCT LIABILITY – NEGLIGENCE

35.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 as if fully set forth herein.

36.   Defendant GM, and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, had and owed a duty of ordinary care in designing, selecting materials, manufacturing, constructing, testing, inspecting, warning, marketing, distributing, and/or selling the Malibu to ensure it was safe for its intended and reasonably foreseeable uses.

37.   Defendant GM, and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, breached its duty of ordinary care and was thereby negligent in that it failed to design, select materials, manufacture, construct, test, inspect, warn, market, distribute, and/or sell – both at the time of sale and post-sale – the Malibu in a reasonable manner to determine that it was safe for its intended and reasonably foreseeable uses, including, but not limited to, one or more of the following respects:

6

a. Failing to design, test and manufacture a front passenger airbag system that would deploy the airbags in a frontal crash;

b. Failing to design, test and manufacture a front passenger occupant detection system that would detect plaintiff and deploy the airbag in a frontal crash;

c. Making critical design decisions for the frontal airbag system and/or the passenger occupant detection system based on cost instead of safety; and

d. Other respects learned through discovery in this case.

38. Defendant GM and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, failed to use ordinary care and was therefore negligent in the design, manufacture, and/or sale of the Malibu in which Plaintiff was a passenger at the time of the Collision, as the front passenger airbag failed to deploy in the Collision.

39. As a direct and proximate result of the negligence of defendant GM, and/or its predecessor entities for which it is responsible and for which it has agreed to assume product liability claims, Plaintiff sustained and will continue to suffer enhanced injuries beyond what she would have otherwise suffered had the airbag deployed in the Collision.

**WHEREFORE**, Plaintiff Kelsey Stevens respectfully requests that this Court enter judgment against defendant GM:

a. Compensatory damages on each Cause of Action in an amount according to proof at the time of trial;

b. All together with any interests, pre and post judgment, attorneys' fees, costs and disbursements;

c. Such other and further relief as this Court deems just and proper.

Dated: Rye, New York
July 12, 2018

Respectfully submitted,

By: *[signature]*

Terrence E. McCartney (TM9831)
REINER SLAUGHTER MCCARTNEY FRANKEL
411 Theodore Fremd Ave., Ste. 206 South
Rye, NY 10580
Telephone: (914) 925-3424
Facsimile: (914) 925-3434
Email: tmccartney@reinerslaughter.com

**ATTORNEYS FOR PLAINTIFFS**